IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SPENCER PARKS, JR.,

                              Petitioner,                    OPINION and ORDER

        v.                                                        22-cv-229-jdp

LANCE WIERSMA,[1]

                              Respondent.

---

Spencer Parks, Jr., without counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2015 convictions in state court for one count of heroin delivery and one count of heroin delivery as a party to a crime. Parks contends that ineffective assistance from his trial attorney deprived him of his constitutional right to counsel. Parks did not file a reply brief, but the petition is otherwise fully briefed and ready for decision.

I conclude that the Wisconsin Court of Appeals reasonably applied clearly established federal law when it decided that Parks did not prove his ineffective assistance of counsel claim based on his counsel's failure to investigate and call a potential defense witness. Parks raises two other ineffective assistance of counsel claims in his petition, but they are procedurally defaulted because he did not make them in his postconviction motions in state court. Accordingly, I will deny Parks's petition.

---

[1] Respondent informed the court that on December 23, 2022, Parks was released from his supervised living facility to extended supervision, and that the Administrator of the Division of Community Corrections of the Wisconsin Department of Corrections, Lance Wiersma, should be named as the respondent.

ALLEGATIONS OF FACT

The following facts are taken from the petition and state court records.

**A. Convictions**

The two convictions that Parks challenges in his petition relate to two incidents in January 2013, in which a confidential informant bought heroin. On January 10, 2013, after calling a man named Charles Dees to arrange to purchase heroin, the confidential informant bought the drug from a man he did not know. Dkt. 8-11, at 82–88, 99–100. The confidential informant wore a wire that recorded audio and video of the transaction. *Id.*, at 84, 99–100. The transaction occurred in the entryway of an apartment building, and an officer who drove to the apartment with the confidential informant observed it from the back of the confidential informant's car. *Id.*, at 85, 101, 105.

On January 17, 2013, the confidential informant arranged another heroin purchase with Dees at the same apartment building. *Id.*, at 86–87. This time, the transaction occurred in Dees's car. According to the confidential informant, after he got into Dees's car, another man got into the car and handed the drugs to Dees, who then gave the drugs to the confidential informant. The same officer who observed the first incident once again drove with the confidential informant to the building and observed the transaction. *Id.*, at 108–09.

At trial, the jury heard testimony from, among other witnesses, the confidential informant and the officer who observed the incidents. The confidential informant did not identify Parks as the man who delivered the heroin, but the officer identified Parks as the person who delivered the drugs in both incidents. *Id.*, at 101–02, 108–10. The jury also watched the video recording of the first incident and heard the audio recording of the second incident. *Id.*, at 84, 104, 113.

2

Parks's trial counsel, Steven Zaleski, cross-examined the confidential informant and the officer who observed the transactions. In his closing argument, Zaleski argued that this was a case of misidentification and that Parks was not at either sale. *Id.*, at 222–28.

The jury found Parks guilty on both drug delivery charges as well as a drug possession charge that Parks does not challenge. Dkt. 8-1.

## B. Postconviction proceedings

Parks, through appellate counsel, filed a postconviction motion with the state trial court requesting a new trial on the grounds that he was deprived of his constitutional right to counsel by Zaleski's failure to contact Dees and call him as a witness at trial. Dkt. 8-4, at 30–31. In support of his motion, Parks submitted an affidavit from Dees that stated that Parks was not present at the January 10 drug sale and was present by did not participate in the January 17 sale. *Id.*, at 44–46.

The trial court held a *Machner*[2] hearing on Parks's claim at which Zaleski and Parks testified. Zaleski testified that he met with Parks 11 times before trial in addition to sending "a lot of letters going back and forth." Dkt. 8-13, at 28, 42–43. Zaleski explained that he used a misidentification defense strategy because Parks told Zaleski that he was not present at either of the sales. *Id.*, at 16–17, 24–25. Zaleski testified that he was familiar with Dees, that he thought that Dees would have been easily impeached by the prosecutor if called as a witness, and that he did not recall Parks ever telling him to contact Dees. *Id.*, at 15–16, 29, and 32–33.

---

[2] The term "*Machner* hearing" comes from a Wisconsin Court of Appeals decision, *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), which allows an evidentiary hearing when a criminal defendant's trial counsel is challenged for ineffective assistance. At the hearing, the trial counsel testifies to their reasoning on the challenged action or inaction. *Id.* at 908–09.

Parks testified that he told trial counsel to call Dees to testify because Dees could identify the person in the video of the first sale. Dkt. 8-14, at 27–28. Parks testified that it was possible that he was in the car for the transactions because Dees would give him rides, but Parks said that he told Zaleski that he wasn't present at either of the sales. *Id.*, at 30, 35, 44.

Parks also called Dees to testify about his affidavit, but Dees invoked his Fifth Amendment rights and gave no testimony. Dkt. 8-13, at 51, 61–62.

The trial court found that Parks told his trial counsel that he was not present for the drug buys, and as a result, trial counsel "decided to focus on misidentification as the defense." Dkt. 8-15, at 11. It concluded that Parks did not show that Zaleski's failure to investigate Dees prejudiced Parks because calling Dees as a witness could have helped the state's case so it was very unlikely that Zaleski would have do so even if he had investigated Dees. *Id.*, at 12–14. The trial court denied Parks's motion.

Parks appealed to the Wisconsin Court of Appeals. Dkt. 8-4. He raised the same claim that Zaleski's failure to investigate and call Dees deprived him of constitutionally effective counsel. *Id.*, at 15–16. The court of appeals affirmed Parks's conviction and the trial court's denial of his postconviction motion. *State v. Parks,* 2021 WI App 41, ¶ 1, 962 N.W.2d 270. The court of appeals assumed without deciding that Zaleski's failure to investigate Dees was deficient and concluded that the trial court properly denied Parks's ineffective assistance of counsel claim "because his trial counsel's performance was not deficient by not calling the witness at trial." *Id.*, at ¶¶ 6, 17. It reasoned that even if counsel had "the information that Parks has presented as being available to trial counsel after an investigation," a decision not to call Dees to testify "would have been a reasonable strategic decision" because it would have

been a "reasonable choice for obtaining acquittals on both charges, rather than only on the first." *Id.*, at ¶ 16.

Parks sought review in the Wisconsin Supreme Court. Dkt. 8-8. Parks presented for review the issue of whether trial counsel was ineffective for "failing to investigate and call a co-actor" to testify. *Id.*, at 4. The court denied review. Dkt. 8-9.

ANALYSIS

Parks contends that his counsel was ineffective in four ways: (1) counsel did not investigate Parks's case; (2) he did not call any witnesses on Parks's behalf; (3) he did not interview the state's witnesses; and (4) he did not impeach the state witnesses' credibility. Respondent contends that the court of appeals reasonably decided Parks's claims about failure to investigate and call witnesses and that the remaining two claims are procedurally defaulted.

## A.  Legal standard

Constitutional claims based on ineffective assistance of counsel are governed by the two-part test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires Parks to show both that his counsel's performance was deficient and that prejudice resulted from the deficient performance. *Id.* at 687. When analyzing whether counsel performed deficiently, there is a strong presumption that counsel's representation is reasonable; the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). This standard is "doubly" deferential when a federal court is reviewing a state court's decision under 28 U.S.C. § 2254(d). *Id.* at 105. The question is not whether counsel's actions were reasonable, but rather, "whether there is

5

any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. It is not enough to show that a different outcome was conceivable; the "likelihood of a different result must be substantial." *Richter*, 562 U.S. at 112.

Federal courts may grant habeas relief when reviewing a state court's prior denial of a postconviction motion only if the state court decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or relied on an unreasonable view of the facts. *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (citing 28 U.S.C. § 2254(d)). Under the deferential standard of review required by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a state court makes a decision "contrary to" the law only if the court either: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). When the state court applies the correct governing principle, a federal court may not grant habeas relief unless the prisoner shows "that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam) (quoting *Richter*, 562 U.S. at 103). For a state court's factual finding to be unreasonable, there must be no possibility of reasonable agreement with the finding. *See Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015).

AEDPA deference applies only to the last state court decision to issue a "reasoned opinion" on the claim at issue. *See Thomas v. Clements*, 789 F.3d 760, 766–67 (7th Cir. 2015). This means that I will review the decision of the Wisconsin Court of Appeals.

**B.  Failure to investigate or call witnesses**

The court of appeals correctly cited *Strickland* as the federal law governing Parks's ineffective assistance of counsel claim based on Zaleski's failure to investigate and call Dees as a witness. As discussed above, the court of appeals assumed without deciding that Zaleski's failure to investigate Dees met the deficiency prong. *State v. Parks*, 2021 WI App 41, ¶ 6. But the court said that this was only the first of two parts of the analysis because Parks needed to show that Zaleski would have been deficient by not calling Dees at trial to prove his claim. *Id.* at ¶ 5. It explained that the "second part is necessary because the investigation, by itself, would not bring the results of the investigation before the jury and thus have a potential to affect the outcome of the trial." *Id.*

The court decided that it would have been objectively reasonable for counsel that had investigated Dees to choose not to call him as a witness. It explained that Dees's testimony contradicted the misidentification theory because Dees would have testified that Parks was at the January 17 sale. *Id.* at ¶¶ 10–13. Dees could potentially help Parks's defense on the first count by identifying an alternative person as the one who delivered the drugs on January 10. But it would make Dees's assertion that Parks did not participate in the second transaction (despite being present) the sole theory of defense for the second count. The court explained that this would make the defense completely dependent on the credibility contest between Dees and the confidential informant, who testified that the man who got into the car with him and Dees handed the heroin to Dees. *Id.* at ¶ 14. In addition, the court reasoned that Dees's testimony that Parks was present at the second sale would potentially hurt Parks's defense on the first count because Dees would confirm the officer's identification of Dees at the second transaction. *Id.* at ¶ 15. That officer testified that Parks was at the second transaction and that

he recognized Parks as the same person from the January 10 transaction. The court concluded that "it would have been a reasonable strategic decision not to call the witness at trial, and instead to accept the trade-off of having a somewhat weaker defense on the first sale in exchange for a stronger defense on the second sale, each based on the potential for the jury to find that an identification of Parks was faulty." *Id.* at ¶ 16.

I conclude that the court of appeals reasonably applied *Strickland* to Parks's claims. The court's analysis would have been stronger if it had explicitly addressed the prejudice prong for Parks's claim that Zaleski should have investigated Dees. But its reasoning concerning the reasonableness of not calling Dees effectively addressed the prejudice prong, even though it did not use the word prejudice. As the court of appeals explained, calling Dees to testify would have precluded Parks from using a misidentification defense and could have actually weakened his defense for both counts of delivery. If Zaleski had investigated Dees, he "would have been aware that the credibility of his potential witness could be in doubt because the witness was himself involved in these transactions and had 13 prior convictions." *Id.* at ¶ 14. An attorney with information about Dees's potential testimony would need to make a strategic decision about whether to abandon the misidentification defense and call him as the main defense witness. The court of appeals correctly decided that a reasonable attorney using professional judgment could easily decide that calling Dees would hurt, not help, Parks's defense. It follows from this decision that Parks did not show that there was a reasonable possibility of a different outcome in his trial even if counsel had investigated Dees. The court of appeals' reasonably decided that Parks did not meet the *Strickland* standard for his claims based on Zaleski's failure to investigate or call Dees, so I will deny his petition for relief on those grounds.

**C.  Failure to interview or question the credibility of state's witnesses**

Parks also asserts that his trial counsel "failed to talk to the state's witnesses and failed to question the credibility of the witnesses." Dkt. 1, at 5. Respondent contends that these claims are procedurally defaulted because Parks did not raise them in state court. If a habeas petitioner has failed to exhaust his federal claims and the opportunity to raise those claims in state court has passed, the petitioner has procedurally defaulted those claims for purposes of federal habeas review. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004); *see also Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) (federal habeas courts "generally decline to hear any federal claim that was not presented to the state courts consistent with the State's own procedural rules." (*alteration adopted*)). Parks did not raise his contentions concerning his trial counsel's investigation and questioning of the state's witnesses in his state court proceedings. His ineffective assistance claim on these grounds is procedurally defaulted and cannot be raised in this petition, so I will deny his petition.

CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Because Parks cannot make this showing,

I will deny him a certificate of appealability. Parks may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

ORDER

IT IS ORDERED that:

1. The petition for writ of habeas corpus filed by Spencer Parks, Jr., Dkt. 1, is DENIED.

2. Petitioner is DENIED a certificate of appealability.

Entered January 29, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge